UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAEANN ROSE GEER,

                Plaintiff,                      Case No. 2:17-cv-13447
                                                    District Judge Stephen J. Murphy III
v.                                           Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 16), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 16), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Raeann Rose Geer, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 16), the

Commissioner's cross-motion for summary judgment (DE 17), and the

administrative record (DE 11).

### A.   Background and Administrative History[1]

Plaintiff alleges her disability began on October 15, 2014, at the age of 42.

(R. at 166.)  In her disability report, she lists several conditions (depression,

anxiety, nerve damage down leg, rheumatoid arthritis, and memory loss) that limit

her ability to work.  (R. at 199.)  Her application was denied on April 17, 2015.

(R. at 60-76, 94-103.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.

at 104-105.)  On July 13, 2016, ALJ Mary S. Connolly held a hearing, at which

Plaintiff and a vocational expert (VE), Annette Holder, testified.  (R. at 34-57.)  On

September 1, 2016, ALJ Connolly issued an opinion, which determined that

Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 17-

33.)

Plaintiff submitted a request for review of the hearing decision/order and a

pre-hearing memorandum.  (R. at 165, 247-249.)  However, on August 24, 2017,

---

[1] The record contains a prior decision, dated June 12, 2013, in which ALJ Anthony
R. Smereka determined that Plaintiff had not been under a disability within the
meaning of the Social Security Act from September 30, 2010 through the date of
that decision.  (R. at 81.)

the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ

Connolly's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 23, 2017.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 436 pages of medical

records, which were available to the ALJ at the time of her September 1, 2016

decision.  (R. at 250-685 [Exhibits 1F – 13F].)  These materials be discussed in

detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity during the period from her alleged onset date of

October 15, 2014 through her date last insured of March 31, 2016.  (R. at 22.)  At

**Step 2**, the ALJ found that Plaintiff had the following severe impairments:

degenerative disc disease of the cervical and lumbar spine, post laminectomy

syndrome, anxiety, and depression.  (*Id*. at 22-23.)  At **Step 3**, the ALJ found that,

through the date last insured, Plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed

impairments.  (*Id*. at 23-24.)  **Between Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined

that, through the date last insured, Plaintiff had the RFC:

> . . . to perform sedentary work . . . except routine, 2-3 step work
> noting moderate concentration, persistence, and pace limitations; no
> work with the public; and the ability to use a cane as needed when
> standing or walking.

(*Id*. at 24-27.)[3]  At **Step 4**, the ALJ determined that, through the date last insured,

Plaintiff was unable to perform any past relevant work.  (*Id*. at 27-28.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that, through the date last insured, there were jobs that existed in

significant numbers in the national economy that Plaintiff could have performed.

(*Id*. at 28-29.)  The ALJ therefore concluded that Plaintiff was not under a

disability, as defined in the Social Security Act, at any time from October 15,

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

[3] According to the hearing transcript, the hypothetical posed to the VE included the
phrase, "the ability to use a cane, no walking or standing."  (R. at 55.)  In the
instant appeal, Plaintiff does not challenge any differences between the hearing
transcript and the RFC statement's limitation of "the ability to use a cane as needed
when standing or walking."  (R. at 24.)  The Court assumes that is either because:
**(a)** if the transcript is accurate, it posed a hypothetical that was more limiting than
the RFC statement in the ALJ's opinion and regarding which the VE testified there
were jobs available; or **(b)** there was a transcription error.

2014, the alleged onset date, through March 31, 2016, the date last insured.  (*Id*. at 29.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff challenges the ALJ's Step 3 conclusion that she does not meet Listing 1.04 and argues that the ALJ improperly dismissed the treating physician evidence. (*See* DE 16 at 21-29.) The Commissioner contends that substantial evidence supports the ALJ's Step 3 determination and that the ALJ properly evaluated the opinion of Plaintiff's treating physician, Mayada Abdul-Aziz, M.D. (*See* DE 17 at 7-20.)

### 1.     Listing 1.04 ("*Disorders of the spine*")

Plaintiff's listing argument contends both that "the ALJ failed to properly evaluate Listing 1.04" and that "Plaintiff meets or equals such listing." (DE 16 at 21-26.) By way of background, at Step 2, the ALJ determined that Plaintiff's severe impairments include degenerative disc disease (DDD) of the cervical and lumbar spine and post laminectomy syndrome. (R. at 22-23.) In so doing, the ALJ explained that, while "[t]he file does show osteoarthritis/degenerative disc disease in the neck and back, . . . there is no evidence of rheumatoid arthritis." (R. at 23.)

Then, at Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*.) Among the Social Security Administrations "listings" are several related to the musculoskeletal system, including:

> **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, *spinal arachnoiditis*, *spinal stenosis*, osteoarthritis, *degenerative disc disease*, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.     Evidence of *nerve root compression* characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR

    B.    *Spinal arachnoiditis*, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

    or

    C.    *Lumbar spinal stenosis* resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*See* www.ssa.gov, Listing 1.04 (emphases added).  In Plaintiff's case, the ALJ

concluded that Plaintiff's DDD "fails to meet Listing 1.04 because the record does

not show *nerve root compression*, *spinal arachnoiditis*, or *lumbar spinal stenosis*."

(R. at 23 (emphases added).)

### a.    The summary nature of Plaintiff's argument

    At the outset of her "medical evidence of record" section, Plaintiff claims

that "[i]t is important that the reader note that the below summary of medical

records includes multiple diagnoses of nerve impingement and stenosis per MRI."

(DE 16 at 10-11.)  She "firmly states" that Listing 1.04 "is met and/or equaled in

this case[.]"  (DE 16 at 22.)  Yet, throughout her argument, Plaintiff makes several

incorporative statements that there are unaccompanied by record citations, such as

"based on the medical records summarized herein," "as set forth above," "as in the

statement of facts above," "cited above," "summarized above," or "all of the above

medical evidence."  (*See* R. at 23, 25-26.)  The Court can only assume that Plaintiff

is referring to the ten pages comprising her pre-argument "medical evidence of record" and "'medical opinion' of 12/15/14 by treating physician Dr. Mayada Abdul-Aziz" sections.  (*See* DE 16 at 10-20).  Where Plaintiff uses some specificity, she mentions:

- "specialist diagnoses supported by MRI findings, that Plaintiff has both nerve impingement and other compressions," and that "she also is diagnosed with stenosis at multiple levels of her spine[,]"  (DE 16 at 22.)

- "Plaintiff clearly has been examined, evaluated, and diagnosed with spinal stenosis and nerve impingement, with the requisite related symptoms/conditions listed as to subparts A and C of the listing."  (*Id*. at 24.)

- Her issues are "confirmed by multiple doctors and imaging studies . . ., with spinal stenosis, [DDD], arthritis, and other factors, resulting in nerve root and spinal cord compromise."  (*Id*. at 25.)

- "Clearly, she has stenosis and nerve root compromise in the cervical and lumbar spine as detailed in the MRI reports summarized above; she also was diagnosed multiple times with degenerative disk disease, a condition that the ALJ included in the severe impairments that she found."  (*Id*.)

None of these sweeping statements are supported by citations to the record, leaving the Court to ask in each case, "Says who?"  Keeping in mind that Plaintiff's alleged onset date is October 15, 2014, the Court can only *assume* (although that should not be necessary) that Plaintiff is referring to the December 8, 2014 x-rays of the thoracic spine, sacrum and coccyx (R. at 457-460), the March 18, 2015

lumbar spine MRI (R. at 553-554, 582-583), and/or the April 21, 2016 lumbar, thoracic and cervical spine MRIs (R. at 575-579).  (DE 16 at 15, 17-18, 20, 25.)

Arguing that she "meets the initial portion of listing 1.04[,]" Plaintiff contends that "[e]ven if the Court does not find that she meets the Listing definitely, at the very least, she has already shown that the ALJ should have reached a discussion of such portions of the listing." (*Id*. at 25.)  Still, "[t]hrough step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]"  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  She has not shown here that "she meets the Listing definitively[.]"  (DE 16 at 25.)  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-433 (6th Cir. 2014) ("the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. . . . Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three.").  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original) (external footnote omitted); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic

description for the listed impairment in order to be found disabled thereunder.")
(citation omitted).

### b.   Nerve root compression and lumbar spinal stenosis[4]

To the extent Plaintiff challenges the ALJ's statement as "unsupported"
and/or "inaccurate," the Commissioner acknowledges that it "is not entirely
accurate" as to nerve root compression and lumbar spinal stenosis.  (DE 16 at 23,
25; DE 17 at 10, 12.)  For example, a March 18, 2015 lumbar spine MRI showed
"*mild* compression of the descending left S1 nerve root," (R. at 553-554, 582-583)
(emphasis added), and an April 21, 2016 lumbar spine MRI showed *mild* foraminal
stenosis, right greater than left, at L3-L4, and DDD at L4-L5 (R. at 576).
However, the Commissioner correctly argues that the ALJ's mis-statements are
"not outcome-determinative," for the reasons explained below.  (DE 17 at 10, 12.)

### c.   Motor loss (1.04A)

As to nerve root compression, Plaintiff must have motor loss, described as
"atrophy with associated muscle weakness or muscle weakness."  Listing 1.04A.

---

[4] Although Plaintiff states that "she meets or equals both subparts A and B of
Listing 1.04, as set forth above[,]" (DE 16 at 23), the Court notes that her brief
does not discuss spinal arachnoiditis and, accordingly, assumes that Plaintiff
intended to argue that she meets Listing 1.04 subparts A and C.  As the
Commissioner correctly notes, "Plaintiff does not even attempt to identify evidence
of spinal arachnoiditis anywhere in the record," (DE 17 at 12), *i.e.*, she only refers
to "spinal arachnoiditis" when quoting the ALJ (R. at 23) or Listing 1.04.  (*See* DE
16 at 9, 22-23.)

Plaintiff's introductory section does note that Dr. Dwivedi's November 11, 2014 examination revealed that Plaintiff's motor strength was "[d]iffusely weak bilaterally," possibly from "lack of effort," (R. at 437), and that Ritu Zacharias, M.D.'s March 3, 2015 examination revealed 5/5 for motor strength in all but the femoral quadriceps (R. at 534).  (DE 16 at 13, 16.)  Dr. Dwivedi's December 8, 2014 notes also reflect that Plaintiff's leg strength results "may be related to lack of effort."  (R. at 448.)  These do not favor a conclusion that her motor loss satisfies Listing 1.04A.  Moreover, as the Commissioner points out, the positive straight-leg raising (SLR) tests on November 11, 2014 and March 23, 2015 do not specify the position in which they were conducted.  (DE 17 at 10-11, 437, 554.) Thus, no adjudicator can tell if it was "sitting and supine" or just one of those forms.

### d.    Pseudoclaudication and ambulation (1.04C)

As to lumbar spinal stenosis, Plaintiff's explanation of pseudoclaudication and apparent argument that her leg pain is "a significant issue" do not show that she meets Listing 1.04C.  (*See* DE 16 at 24-25.)  As the Commissioner notes, Plaintiff "does not . . . cite any evidence to support her belief that her leg pain is due to pseudoclaudication[.]"  (DE 17 at 13.)  Moreover, Plaintiff would need to show an "inability to ambulate effectively, as defined in 1.00B2b[,]"  *i.e.,* Listing

1.04C.  Within her brief, she made some references to ambulation within the

record.  These reflect that:

- On December 8, 2014, Samvid Dwivedi, D.O. noted both that Plaintiff "ambulates slowly, but with out [sic] deficit[,]" and that Plaintiff was "observed walking briskly without deficit after leaving appointment."  (R. at 448.)

- On December 12, 2014, Plaintiff reported to Dr. Abdul-Aziz that "[s]he continues to have chronic [lower back pain] that radiates to the legs[,]" and that "[s]he has pain daily and it interferes with her ambulation and her ability to function at home."  (R. at 449.)

- Dr. Abdul-Aziz's December 15, 2014 medical source statement claims that Plaintiff's limitations are supported by "impaired ambulation," among other things.  (R. at 394.)

(DE 16 at 14-15, 19.)  However, the Commissioner points to Dr. Zacharias's

March 3, 2015 notes, which reflect Plaintiff's report that "[s]he has walked with a

cane for support; however, does not do this on a consistent basis[,]" and further

notes that "[s]he will continue to walk with a cane for support[,]" (R. at 531), as

well as several notes dated June 11, 2014 through March 23, 2015 that Plaintiff

had "normal gait," although these do not appear to have been from acceptable

medical sources (R. at 406, 413, 420, 428, 452, 554 ).  (DE 17 at 14.)  Neither

party points to any record of Plaintiff having used two canes, two crutches or a

walker, as referenced in the non-exhaustive list of examples of ineffective

ambulation. 20 C.F.R. Part 404, Subpt. P, App'x 1 § 1.00(B)(2)(b)(2).  In fact, the

references to "cane" involve "a cane" or "a single cane." (*See* DE 16 at 8, 10, 16; DE 17 at 5, 14; R. at 24, 26, 531.)[5]

### e.    Summation

Plaintiff argues that the ALJ's conclusion is "unquestionably flawed," as it does not cite records, or make any "real analysis," and she is "left but to wonder if the ALJ evaluated the different subparts or even each aspect of the initial portion of 1.04," and "left believing that the medical evidence is not worthy of evaluation under the listing . . . ." (DE 16 at 21-22, 25-26.) Stated otherwise, the medical evidence "deserved a reasoned explanation . . . ." (DE 16 at 26.) However, even if the ALJ's statement about lack of evidence of nerve root compression or lumbar spinal stenosis is "inaccurate" and based on "an apparently faulty review of the record," (DE 16 at 25), the error is harmless, as Plaintiff "does not present medical evidence that her impairment meets or exceeds the Listing in 1.04, as is her burden." *Harvey v. Comm'r of Soc. Sec.*, No. 14-cv-10614, 2014 WL 5465531, at *5 (E.D. Mich. Oct. 28, 2014) (Ludington, J.) (citing *Foster*, 279 F.3d at 354) (further noting that "[a]lthough the ALJ did not explain her reasoning for determining that [plaintiff] did not meet Listing 1.04, [plaintiff] cannot show she suffered prejudice from this lack of explanation.") Moreover, "[t]he ALJ made

---

[5] The Court notes that Plaintiff's hearing testimony also seems to refer to a singular cane. (R. at 39, 49-50.)

sufficient factual findings elsewhere in [her] decision to support [her] conclusion at step 3." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (further noting that "even if these reasons failed to support the ALJ's step-three findings, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment between October 2006 and July 2011."). *See also Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (court may look to findings elsewhere in the decision to affirm step three finding; there is no need for ALJ to "spell out every fact a second time . . . ."). While Plaintiff's argument that "[t]he listing [was] dismissed out of hand in the unfavorable decision without any reference to the medical records[,]" (DE 16 at 22), might appear to be valid if one narrowly focuses solely on the sentence of the ALJ's Step 3 discussion that addresses Listing 1.04 (R. at 23-24), a broader scrutiny of the opinion reveals a more extensive analysis of the medical records within the RFC determination (as described above and below in this report and recommendation), which supports the ALJ's Step 3 conclusion that Plaintiff's DDD does not meet Listing 1.04. (*See* R. 26-27.) This includes reference to the April 10, 2015 physical RFC assessment of state agency medical consultant R. H. Digby, M.D., M.P.H. (R. at 69-71), to which the ALJ gave "some weight." (R. at 27.) It appears that Listing 1.04 was expressly considered, yet not found applicable to Plaintiff. (R. at 67-68.) Moreover, the Disability Determination

Explanation's "credibility assessment" observes that "[a]lthough the [claimant] reports use of a cane, there is no objective data to support this."  (R. at 68.)  In any event, Plaintiff has not shown that she satisfies the particulars of either 1.04A or 1.04C, and she does not appear to argue that she satisfies 1.04B (spinal arachnoiditis).  Therefore, the ALJ's Listing 1.04 conclusion should stand.

### 2.    Treatment of opinion evidence and 20 C.F.R. §§ 404.1527, 416.927

The Social Security Administration's opinion evidence regulation provides that, regardless of the source, the SSA "will evaluate every medical opinion" that it receives.  20 C.F.R. §§ 404.1527(c), 416.927(c) (effective Aug. 24, 2012 to Mar. 26, 2017).  Furthermore, unless the SSA gives controlling weight to a treating source's medical opinion, the SSA will consider the examining relationship, the treatment relationship, supportability, consistency, specialization and other factors "in deciding the weight we give to any medical opinion."  *Id*.  "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When reviewing the "opinion evidence," the ALJ made several assignments of weight, including:  **(a)** "little weight" to Dr. Abdul-Aziz's December 15, 2014 medical opinion (R. at 393-395); **(b)** "great weight" to the limitation of using a cane as needed, presumably set forth in Ritu Zacharias, M.D.'s March 3, 2015

notes (R. at 531), because it was "consistent with the intermittent gait abnormality

shown in the treatment records[;]" and, **(c)** "some weight" to state agency

consultant R. H. Digby, M.D.'s April 10, 2015 physical RFC assessment (R. at 69-

71).  (R. at 26-27.)

Plaintiff's opinion evidence statement of error does not develop a challenge

to the assignment of "some weight" to Dr. Digby's opinion (*see* DE 16 at 26-29),

and Plaintiff acknowledges the ALJ's assignment of "great weight" to the

limitation for a cane as needed (DE 16 at 10).  However, Plaintiff does argue that

the ALJ did not adequately explain the weight assigned to the *treating physician*

*evidence*, namely taking issue with the ALJ's "perfunctory" explanation that Dr.

Abdul-Aziz's opinion December 15, 2014 opinion "suggests significant limitations

that are *unsupported* by the objective evidence."  (DE 16 at 27, R. at 27 (emphasis

added).)  In sum, Plaintiff claims that the dismissal of this evidence "without

explanation" and "against the substantial evidence of the case" does not comply

with the "good reasons" requirement.  (DE 16 at 26-29.)  Still, Plaintiff does not

meet her burden to overturn the ALJ's assignment of weight to Dr. Abdul-Aziz's

opinion when Plaintiff notes that "there are multiple diagnostic studies and

consistent treatment which comport with the physician's opinion of Plaintiff's

limitations and conditions[,]" and, akin to the method used in her Step 3 argument,

supports that statement with a general reference to the "above medical summary."

(DE 16 at 28.)  In addition, Dr. Abdul-Aziz made assessments about, *inter alia*, exertional, postural, manipulative and environmental limitations.  Plaintiff has not specified a difference between the treating physician's assessments in these areas and the ALJ's RFC (*i.e.*, a difference in one of the exertional evaluations, or the RFC's lack of postural, manipulative, or environmental limitations) that she wishes to challenge, which may have supported an argument that the physical RFC assessed by the ALJ fails to accommodate Dr. Abdul-Aziz's physical RFC assessment.

Instead, it is clear that the ALJ discounted this opinion on the basis of the supportability and/or consistency factors.  20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4).  As for support of this statement, the ALJ need not repeat at a later step his reasons from prior steps.  *Bledsoe*, 165 F. App'x at 411 ("Bledsoe's argument that the ALJ should spell out the weight he gave to each factor in his step three analysis is not supported by case law.").  Earlier in the RFC discussion, the ALJ stated:

> The record shows the claimant is s/p a laminectomy dated 1999. She has complained of ongoing low back pain since the alleged onset date with some decreased sensation in the left leg. This was attributed to post-laminectomy syndrome/radiculopathy as well as chronic pain or fibromyalgia.  . . . Updated imaging of the cervical and lumbar spine confirms degenerative disc disease in both areas. The most recent lumbosacral images suggest the lumbar degenerative disc disease has improved in recent years. . . .

> Some of the physical exams have shown some positive spinal
> tenderness, reduced strength, and impaired motion. Others have
> shown to [sic] tenderness,  intact gait, and intact motion. . . . The
> claimant was observed to "walk briskly" out of the office following
> one appointment. The physician suggested that the impaired strength
> shown on exam may stem from lack of effort.

(R. at 26.)  The ALJ supports these statements with several record citations, some

of which pre-date the Plaintiff's October 15, 2014 alleged onset date.  (*See*, *e.g.*, R.

at R. at 403, 406, 408, 413, 422.)  However, he also pointed to Dr. Dwivedi's

November 11, 2014 and December 8, 2014 notes (R. at 436-437, 448) and appears

to cite March 2015 and April 21, 2016 imaging (R. at 553-554, 561-562, 575-579,

582-584).  Moreover, the ALJ states that "[t]here is no report in the medical

records that she lies down most of the day or naps due to medication effects."  (R.

at 27).  Plaintiff's opinion evidence statement of error does not argue that these

portions of the ALJ's discussion are inaccurate.  More to the point, as the

Commissioner points out, the latter observation by the ALJ conflicts with Dr.

Abdul-Aziz's thought that Plaintiff would need to lie down "every ½ hour[.]"  (DE

17 at 19, R. at 394.)

In addition, the Court notes that state agency medical consultant Dr. Digby's

April 10, 2015 physical RFC assessment specified certain exertional, postural,

manipulative and environmental limitations.  (R. at 69-71.)  Plaintiff does not

challenge the ALJ's characterization of Dr. Digby's assessment.  (R. at 27.)

Moreover, in assigning this opinion "some weight," the ALJ explained that

Plaintiff "has exhibited intact motion repeatedly and intact gait that would not warrant postural or hazard restriction, and there is no indication she is incapable of foot controls or noise exposure. She drives without issue, and there is no significant sensitivity to sound noted in the medical records." (R. at 27.) Accordingly, the ALJ explained the absence of postural, environmental and manipulative limitations.

For the foregoing reasons, Plaintiff has not convinced the Court that the ALJ's treatment of the opinion evidence was improper under 20 C.F.R. §§ 404.1527, 416.927 − a burden that is hers to meet. *Walters*, 127 F.3d at 529.

### F. Conclusion

Plaintiff has the burden of proof on her statements of error, and she has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 16), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 6, 2019                    s/*Anthony P. Patti*
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 6, 2019, electronically and/or by U.S. Mail.

<div style="margin-left: 40%;">

s/Michael Williams       
Case Manager for the
Honorable Anthony P. Patti

</div>